UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>WILLIAM H. NORMANDIN | Criminal Case No. 21-CR-005 JJM |

### GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM

The Government urges the Court to accept the jointly recommended three-year term of incarceration because it is reasonable and proper. Defendant has a demonstrated and entrenched interest in images and videos of the rape and sexual abuse of children. In addition to possessing child pornography for more than a year, on at least three known occasions he intentionally uploaded child pornography videos for the very purpose of making them available to others. Through his distribution and possession, he created demand for child pornography and thereby incrementally fueled its production. Every time he viewed the images or watched the videos and every time he passed them on to others, Defendant caused actual harm to real victims, the children in those images and videos. Under 18 U.S.C. § 3553(a) and as acknowledged in the plea agreement and through the parties' joint recommendation, three years of incarceration, not more and not less, is necessary to address adequately this Defendant's serious crimes.[1]

---

[1] Under the plea agreement, the parties are each required to recommend a three-year term, and the Government is required to dismiss the charges that expose Defendant to five-year mandatory minimum terms of incarceration. This agreement is the product of extensive negotiations and presents, the Government submits, a fined-tuned recommendation appropriate to the facts of this particular case. The Government urges the Court to give due weight to the parties' thoughtful negotiations, agreement, and joint recommendation.

1

I.      ARGUMENT.

   1.     **Defendant intentionally and knowingly distributed and possessed child pornography.**

Defendant's connection to child pornography, as demonstrated by evidence, is extensive, intentional, and offensive in the extreme. The connection is not incidental, as suggested in his sentencing submissions. Over a period of approximately six months, Defendant, using different Kik accounts, uploaded three different videos of child pornography from his computer device to Kik's messaging platform. The uploaded files contained only child pornography, not a mix of child and adult pornography. Defendant uploaded his first child pornography video on Sunday, August 11, 2019 at 4:54 p.m. The first uploaded video depicted a partially nude, prepubescent female sitting with her legs spread and inserting what appeared to be a curling iron into her vagina. Defendant used "noahperez22," the first of three Kik accounts uncovered. The video was uploaded to the Kik chatroom entitled "Tiny Subs," short for tiny submissives. Another Kik user reported the upload to a Kik content moderator. Kik in turn informed authorities and closed the account.

Despite the closure, Defendant's distribution activities continued. He created another Kik account and uploaded his second and third known child pornography videos respectively on Saturday, February 22, 2020 at 8:33 a.m. and Monday, February 24, 2020 at 2:30 a.m. The second video depicted a nude prepubescent female in a bathtub, masturbating, and displaying her vagina. The third showed a female of undetermined age performing oral sex on a prepubescent male. For these uploads,

Defendant used "noahp0232," the second of his uncovered Kik accounts. These uploads were shared with one or more other Kik users, and after Kik was alerted to the uploads, the authorities were informed and Defendant's second known Kik account was closed.[2]

On October 27, 2020, police executed a warrant to search Defendant's home and computer devices. On Defendant's cellular telephone, there were roughly 800 images of child pornography. The images included one depicting a male placing his penis near an infant's face, another of two nude toddlers in a bathtub with a male exposing his penis, and a third of a male inserting his penis into a prepubescent female's vagina. Also, through Defendant's cellular telephone, police encountered Defendant's third Kik account, "jjpeters12." Like the other two, the account name concealed Defendant's true identity.

Text messages recovered from Defendant's third Kik account show that his collection of child pornography was much larger than just the roughly 800 images and three videos. Between August 6 and October 26, 2020, Defendant and the user of Kik account "jr818383" exchanged *hundreds* of hyperlinks to files stored on Mega, a cloud storage site similar to Dropbox or Google Drive.[3] Case Agent James Richardson

---

[2] Investigation established that the first and second Kik accounts, "noahperez22" and "noahp0232," belonged to and were being used by Normandin. The three video uploads came from IP addresses associated with Normandin's Cox internet account. The subscriber information for the Kik accounts all included email addresses belonging to Normandin. Normandin admitted to authorities that "noahperez22" has been his account, that Kik closed it, and that he had "probably" created other Kik accounts.

[3] Based on investigations from around the country, Mega appears to have been a cloud storage site of choice for child pornography collectors. Files on mega, which is headquartered oversees and was subject to encryption, cannot be obtained using ordinary investigative tools.

recently checked many of those hyperlinks. Almost all of the checked hyperlinks led to a webpage that displayed the following message:



In other text messages recovered from Defendant's third Kik account, there is further demonstration of Defendant's sexual interest in children. With the user of Kik account "bigbdaddy28," Defendant expressed his interest in child pornography videos:

        8/27/2020 at 12:17:10 a.m.
        bigbdaddy28                          You into young vid [short for video]

        8/27/2020 at 12:17:28 a.m.
        Defendant                              I'm into anything but shit and piss

        8/27/2020 at 12:17:32 a.m.
        Defendant                              Oh and blood

With the user of Kik account "larismill," who identified herself as a 15-year old female, Defendant's messaging indicated, at a minimum, a hunt for minors:

        8/28/2020 at 5:25:56 p.m.
        Defendant                              Asl? [acronym for age, sex, location]

        8/28/2020 at 5:27:45 p.m.
        larismill

                                                    15 F Sweden [with small photograph]

| | |
|---|---|
| 8/28/2020 at 5:28:34 p.m.<br>Defendant | Ummm can't really tell you're female in that one lol plZ try again |
| 8/28/2020 at 5:29:07 p.m.<br>larismill | Sorry I don't do more... |
| 8/28/2020 at 5:30:41 p.m.<br>Defendant | Haha I was just asking for your finger nails... |
| 8/28/2020 at 5:31:36 p.m.<br>larismill | Send link and I send |
| 8/28/2020 at 5:33:28 p.m.<br>Defendant | Not how the game is played sorry. Ps Fun fact males ring fingers are longer than their index finger have a good one dude |

Defendant's tie to child pornography is deeper and more substantial than he admits. He is not, as he suggests in his sentencing memorandum, an incidental viewer. On multiple occasions, he shared child pornography videos by uploading them to Kik and making them available to others. His distribution activities were direct and intentional; he specifically sought to share child pornography. He did not utilize a peer-to-peer network or passive sharing system. His collection of child pornography was substantial, and the text messages recovered corroborate his sexual interest in children. That this Defendant is trying to minimize his criminality should guide the Court in fashioning his sentence.

### 2. Defendant's sentence should reflect that he, in part, created and fed demand for the suffering of children in the production of child pornography.

The seriousness of this offense should not be overlooked. As the Seventh Circuit Court of Appeals observed:

> "Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded – both consumed himself and disseminated to others. The greater the customer demand for child pornography, the more that will be produced. Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so the more will be produced."

*United States v. Goldberg*, 491 F.3d 668, 672 (7th Cir. 2007) (citations omitted). Courts have repeatedly recognized that deterrence and punishment should be primary factors in fashioning child pornography sentences. *See e.g.*, *Osborne v. Ohio*, 495 U.S. 103, 109-10 (1990) ("It is surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand."); *United States v. Lichtman*, 683 Fed.Appx. 873, 879 (11th Cir. 2017) ("A strong consideration in weighing the seriousness of [possession and distribution offenses] is that those who receive and exchange child pornography create a demand that influences the production of the pornography and the attendant physical and emotional injury to children."); *United States v. Ellison*, 113 F.3d 77, 81 (7th Cir. 1997) (observing that "even the receipt of [child pornography] for personal use, without more, keeps producers and distributors of this filth in business.").

The First Circuit has repeatedly found that the effects of demand for child pornography, namely the perpetuation or increase of supply, justifies lengthy jail terms for child pornography possession. *See United States v. Gomera-Rodriguez*, 952 F.3d 15, 20 (1st Cir. 2020) (97-month term of incarceration substantively reasonable as means of deterring demand and thereby tamping down supply); *United States v. Hassan-Saleh-Mohamad*, 930 F.3d 1, 9 (1st Cir. 2019) ("There is nothing erroneous about the district court's statement about fueling demand and supply, and this was a reasonable factor for the court to weigh (especially here, where Hassan not only possessed child pornography but also made available at least two videos on a file-sharing network.)"); *United States v. Gall*, 829 F.3d 64, 75 (1st Cir. 2016) (because "possession of child pornography fueled the market for child pornography, and thus indirectly harmed children[,]" Guidelines range sentence for child pornography possession offense was substantively reasonable.)   One of the goals of sentencing in child pornography cases is the reduction of demand for child pornography, and serious jail sentences aid in achieving that goal.  *See id.*

This Defendant helped fuel the market for child pornography.  He both possessed a substantial stash of child pornography, including images of toddlers and other prepubescent children, and he propagated pornographic films of prepubescent children.  Moreover, the demand he helped perpetuate or increase included demand for child pornography involving the most vulnerable in an already vulnerable class.

In fashioning the plea agreement, the Government agreed to dismiss two child pornography distribution charges, each of which carry a five-year mandatory minimum

7

sentence, because both parties recognized that balanced in the light of Defendant's history and personal characteristics, a three-year term of incarceration is reasonable and appropriate. For one involved at Defendant's level in the creation and perpetuation of demand for child pornography and its attendant harm to children, any sentence less than that would not be sufficient.

> **3.  Defendant's sentence should reflect the harm he has caused to the children in his collection of child pornography.**

The sentence imposed in this case is society's response to the abuse suffered by the victims and should acknowledge the harm this Defendant has caused to them. The children depicted in the child pornography Defendant possessed and distributed are all actual victims of Defendant's offense conduct and on an ongoing basis experience harm from the collection and distribution of the images and videos of their rape and sexual abuse. Child pornography is "a permanent record" of the participation of and harm suffered by the involved children, and that harm "is exacerbated" by the circulation of the images or videos. *New York v. Ferber*, 458 U.S. 747, 759 (1982); *see also*, *Osborne v. Ohio*, 495 U.S. 103, 111 (1990) ("[T]he materials produced by child pornographers permanently record the victim's abuse. The pornography's continued existence causes the child victims continuing harm by haunting children in years to come."); *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 249 (2002) ("[A]s a permanent record of a child's abuse, the continued circulation itself would harm the child who had participated. Like a defamatory statement, each new publication of the speech would cause new injury to the child's reputation and emotional well-being."). The continuing harm caused by the

dissemination and possession of child pornography is "well supported by medical and social science." *See United States v. Kearney*, 672 F.3d 81, 94 (1st Cir. 2012) (citing *Ferber*, 458 U.S. at 759-60 & nn. 9-10 (collecting authorities)).

In *Paroline v. United States*, 572 U.S. 434 (2014), the United States Supreme Court described the harm suffered by one particular victim of child pornography. The victim, when eight and nine years old, "was sexually abused by her uncle in order to produce child pornography[,]" and her uncle was prosecuted and "sentenced to a lengthy prison term." *Id.* at 440. The victim "underwent an initial course of therapy" over approximately two years and appeared to return to "normal[.]" *Id.* "[H]er involvement in dance and other age-appropriate activities… justified an optimistic assessment." *Id.* But she appeared "to decline in her teenage years[,]" and "a major blow to her recovery came when, at the age of 17, she learned that images of her abuse were available nationwide and no doubt worldwide." *Id.* In a victim abuse statement, she described her injury from the distribution of her images as follows:

> Every day of my life I live in constant fear that someone will see my pictures and recognize me and that I will be humiliated all over again. It hurts me to know someone is looking at them – at me – when I was just a little girl being abused for the camera. I did not choose to be there, but now I am there forever in pictures that people are using to do sick things. I want it all erased. I want it all stopped. But I am powerless to stop it just like I was powerless to stop my uncle…. My life and my feelings are worse now because the crime has never really stopped and will never really stop…. It's like I am being abused over and over and over again.

*Id.* at 440-41. The crimes of this victim's original abuser "were compounded by the distribution of images of her abuser's horrific acts, which meant the wrongs inflicted

9

upon her were in effect repeated; for she knew her humiliation and hurt were and would be renewed into the future as an ever-increasing number of wrongdoers witnessed the crimes committed against her." *Id.* at 441.

The children depicted in Defendant's collection of child pornography are harmed every time their images come into focus before another pair of strange eyes.[4] Defendant was one of those strangers, and he put multiple videos of child pornography before the eyes of other strangers. For the harm Defendant caused all of his victims, a three-year term of incarceration is reasonable and proper. Absent such a reasonable term of incarceration, sentencing cannot achieve justice for Defendant's victims.

### 4. The jointly recommended sentence is necessary to deter this defendant.

The Court must carefully consider the need for specific deterrence, especially where there are indications of an engrained pattern. Defendant distributed on three occasions, he possessed approximately 800 images and three videos, and there is every reason to believe that his conduct and collection were more substantial. Messaging corroborates that his connection to child pornography was not incidental and that he has a proclivity for child pornography. Moreover, when Kik closed his account because he was distributing of child pornography, he opened a new Kik account and continued to share child pornography. Finally, recidivism in this area is not uncommon, and excessively lenient sentences may have the unintended effect of misleading defendants

---

[4] The images and videos in this case were submitted to the National Center for Missing and Exploited Children for identification, but as of the date of this filing, no responses have been received. Nonetheless, there is no dispute the victims here are real people.

10

into believing that there will not be serious consequences for reoffending.[5] Absent a serious term of incarceration, such as the agree-upon recommendation, Defendant's pattern will not change.

The Court should also consider Defendant's failure to acknowledge reality. In his sentencing arguments, Defendant relies on a psychiatric expert, whose opinions are critically incomplete because of Defendant's lack of candor and failure to acknowledge his sexual attraction to children and use and distribution of child pornography. He did not tell his expert that on at least three occasions he specifically distributed child pornography videos. He did not acknowledge that, in addition to at least three videos and at least 800 images, his trove of child pornography included numerous cloud server files. He did not reveal that he texted with others about child pornography. He did not reveal that he visited a chat group focused on "tiny subs" (children) and sought out children via Kik. In his sentencing memorandum, he also does not acknowledge reality. That Defendant still does not admit that he had been satisfying his sexual attraction to children with child pornography creates a greater risk of recidivism, a risk that the recommended three-year sentence is designed to mitigate.

---

[5] By statute, a second-time child pornography possession charge carries a 10-year mandatory minimum term of incarceration. *See* 18 U.S.C. § 2252(b)(2). Numerous other defendants have reoffended. *See United States v. Andreozzi*, 20-cr-0082-MSM (sentenced to 10 years on second possession offense; first in Rhode Island state court); *United States v. MacGregor*, 18-cr-0018-WES (10-year term on second federal possession offense); *United States v. Llorca*, 18-cr-0017-WES (10-year term for second possession offense; first in Massachusetts state court); *see also United States v. Skally*, 21-cr-0077-WES (charged and facing 10-year term for second federal offense); *United States v. Patrick O'Donnell*, 20-cr-0051-JJM (charged and facing 10-year term for second offense after multiple state possession convictions).

11

## II.     CONCLUSION

For all of these reasons, the Government asks the Court to accept the parties' recommendation and sentence Defendant to three years of incarceration.

Respectfully submitted,

UNITED STATES OF AMERICA
By its Attorney,

ZACHARY A. CUNHA
United States Attorney

/s/ Milind Shah
Milind Shah
Assistant U.S. Attorney
U.S. Attorney's Office
One Financial Plaza, 17th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
milind.shah@usdoj.gov

CERTIFICATE OF SERVICE

On this the 13th day of July 2022, the above supplemental memorandum was filed using the Court's CM/ECF System and was thereby made available to Defendant's counsel, Assistant Federal Defender Joanne Daley.

/s/ Milind Shah
Milind Shah
Assistant U.S. Attorney
U.S. Attorney's Office
One Financial Plaza, 17th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
milind.shah@usdoj.gov
